

ENTERED

JAN 14 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:            Deputy Clerk

**NOT FOR PUBLICATION**

FILED

JAN 14 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:            Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:                              )    Case No. 2:05-bk-43980-AA
                                    )
SHANEL STASZ,                       )    Chapter 7
                                    )
                                    )    **MEMORANDUM DECISION**
                                    )
                                    )    Date:  March 8, 2011
                                    )    Time:  9:30 a.m.
                                    )    Place: United States Bankruptcy Court
                                    )           Courtroom # 1539
                        Debtor.     )           255 East Temple Street
_____    )           Los Angeles, CA 90012

Before the court is the motion of Debtor, Shanel Stasz ("Stasz") for reconsideration of this court's Order Denying Motion: (1) for Disqualification and/or Recusal of Judge Alan M. Ahart; (2) to Set Aside All Rulings, Orders and Judgments in All Proceedings in this Bankruptcy Case; (3) and for Disgorgement of All Funds and Fees Received by the Trustee and/or his Counsel or Accountant ("Order") entered on December 28, 2010. Having considered the grounds for reconsideration stated in the motion in light of the court's findings of fact and conclusions of law stated orally and recorded in open court at the hearing on December 28, 2010, which form the basis for the Order, the court dispenses with oral argument and denies the relief requested in the motion based upon the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52(a)(1),[2] as incorporated into FRBP 7052, and applied to contested

_____

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").

1   matters by FRBP 9014(c).

2   I. STATEMENT OF FACTS

3   On October 13, 2005, Stasz filed her voluntary petition under chapter 7 in the above

4   referenced case. The case was assigned to Honorable Alan M. Ahart, United States Bankruptcy

5   Judge. Rosendo Gonzalez ("Gonzalez") was appointed as trustee. Stasz received a discharge on

6   March 6, 2007. Gonzalez has spent the past five years endeavoring to collect and reduce to

7   money the property of the estate. His efforts have faced stiff opposition by Stasz. Judge Ahart

8   has made rulings as disputes between Gonzalez, Stasz, and other interested or affected parties

9   have arisen during the administration of the case. Gonzales ultimately submitted a final report as

10  trustee to the United States trustee. In conjunction therewith, Gonzales and each of his

11  professionals, over Stasz's objection, sought final allowance of the fees incurred and costs

12  advanced on behalf of the estate. Stasz then sought recusal of Judge Ahart.

13  On October 20, 2010, Stasz filed and served a Motion: (1) for Disqualification and/or

14  Recusal of Judge Alan M. Ahart; (2) to Set Aside All Rulings, Orders and Judgments in All

15  Proceedings in this Bankruptcy Case; (3) and for Disgorgement of All Funds and Fees Received

16  by the Trustee and/or his Counsel or Accountant ("recusal motion"), together with a notice

17  setting the matter for hearing on November 10, 2010. Stasz's motion sought not only a recusal of

18  Judge Ahart, but an order setting aside all rulings, orders, and judgments entered in the

19  bankruptcy case and related adversary proceedings and a disgorgement of all fees and expenses

20  received by Gonzalez and his professionals. Gonzalez filed written opposition to the recusal

21  motion on October 28, 2010, together with objections to Stasz's declaration and request for

22  judicial notice in support of the motion. On November 3, 2010, Stasz filed Debtor's Reply to

23  Chapter 7 Trustee's Opposition to Objection to Evidence; Trustee's Objection to Debtor's

24  Request for Judicial Notice, and Debtor's Motion: (1) for Disqualification and/or Recusal of

25  Judge Alan M. Ahart; (2) to Set Aside All Rulings, Orders and Judgments in All Proceedings in

26  this Bankruptcy Case; and (3) for Disgorgement of All Funds and Fees Received by the Trustee

27

- 2 -

1  and/or his Counsel or Accountant, together with a request for judicial notice and supporting

2  declaration (collectively, "Reply").

3       Judge Barry Russell, who was assigned to hear the recusal motion, recused himself by

4  order entered on November 10, 2010, and the matter was reassigned to this court for

5  determination and continued to November 30, 2010.  On November 22, 2010, Stasz filed an <u>ex</u>

6  <u>parte</u> request to continue the hearing on the recusal motion pending receipt of a transcript of a

7  hearing on the final fee applications by the Gonzalez and his professionals held before Judge

8  Ahart on November 10, 2010.  The court granted Stasz's request and continued a hearing on the

9  recusal motion to December 28, 2010.  The transcript was filed on November 29, 2010.  On

10  December 23, 2010, Stasz filed supplemental points and authorities in support of the recusal

11  motion, together with a further declaration and request for judicial notice.  After a hearing on

12  December 28, 2010, Stasz's recusal motion was denied.

13  II. <u>DISCUSSION</u>

14       This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and

15  1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is

16  appropriate in this court.  28 U.S.C. § 1409(a).

17  A.  <u>Standard for Reconsideration Under Rule 9023</u>

18       Rule 9023 makes Rule 59(e) of the Federal Rules of Civil Procedure applicable in

19  bankruptcy cases.  FRBP 9023.  Rule 59(e) authorizes the filing of a motion to alter or amend a

20  judgment not later than 14 days after entry of the judgment.  F.R.Civ.P. 59(e).  Reconsideration is

21  "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of

22  judicial resources.'"  <u>Carroll v. Nakatani</u>, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted);

23  <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).  In

24  the Ninth Circuit, "'a motion for reconsideration should not be granted, absent highly unusual

25  circumstances, unless the district court is presented with newly discovered evidence, committed

26  clear error, or if there is an intervening change in the controlling law.'"  <u>Kona Enters.</u>, 229 F.3d

27

1  at 890 (quoting <u>389 Orange Street Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999)).

2  Reconsideration may also be granted "as necessary to prevent manifest injustice." <u>Navajo Nation</u>

3  <u>v. Confederated Tribes & Bands of the Yakima Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir.

4  2003).

5        In this case, the Order was entered on December 28, 2010. Stasz's motion was filed on

6  January 11, 2011 – within 14 days of entry of the Order. Stasz's motion is timely under Rule

7  9023. Stasz's motion does not allege newly discovered evidence nor an intervening change in

8  controlling law.[3] Nor does Stasz's motion allege that reconsideration is necessary to prevent

9  manifest injustice. Stasz alleges in her motion that the court erred in:

10      1.     Striking Stasz's Supplemental Points and Authorities and Supplemental Request for Judicial Notice as untimely;

11

12      2.     Considering the Chapter 7 Trustee's Opposition and Objection to Debtor's Request for Judicial Notice and Objection to Evidence – Declaration of Shanel Stasz filed on October 28, 2010; and

13

14      3.     Failing to consider, in addition to the statutory grounds for recusal under 28 U.S.C. § 455, the Supreme Court's holding in <u>Caperton v. A.T. Massey Coal Co.</u>, ___ U.S. ___, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

15  Stasz's Motion, 3:8 – 4:2.

16

17  A. <u>The Court Properly Struck Stasz's Supplemental Points and Authorities, Declaration, and Request for Judicial Notice as Untimely.</u>

18        With respect to the first ground for reconsideration, the court properly struck as untimely

19  Stasz's supplemental points and authorities, declaration, and request for judicial notice at the

20  hearing on December 28, 2010. The evidentiary record closed with the filing of Stasz's reply to

21  Gonzalez's response in opposition to the motion. Notwithstanding its ruling, the court took

22  judicial notice of the transcript of the hearing on November 10, 2010, and considered the

23

---

24  [3] Because Stasz's motion is not premised on any ground that would necessitate the consideration

25  of extrinsic evidence (such as newly discovered evidence), the court declines to consider the Declaration of Shanel Stasz and Request for Judicial Notice filed in support of the motion for

26  reconsideration. Stasz's motion must be determined based on the evidentiary record before the court at the hearing on December 28, 2010.

27

1    contents of the transcript, as requested by Stasz, in ruling on the recusal motion.

2  B. The Court Properly Considered Gonzalez's Response in Opposition to Stasz's Recusal

3  Motion.

4        With respect to the second ground for reconsideration, Gonzalez was required by LBR

5  9013-1(f) to file a written response in opposition to Stasz's recusal motion not later than October

6  27, 2010 – 14 days prior to the hearing scheduled for November 10, 2010.  Stasz observed in her

7  Reply that Gonzalez's response in opposition to the recusal motion was filed and served on

8  October 28, 2010, stating that "it is not timely filed and cannot be considered in its entirety by the

9  Court pursuant to LBR 9013-1(h)."[4]  Stasz did not ask in her Reply that Gonzalez's response be

10  stricken as untimely.  Given the fact that Gonzalez's response was only 1 day late, Stasz replied

11  to the merits of the response, and there was no showing of prejudice to Stasz attributable to the 1-

12  day delay, the court exercised its discretion under LBR 9013-1(h) and considered Gonzalez's

13  response in determining the merits of Stasz's recusal motion.

14  C. The Court Applied the Proper Legal Standard in Determining Stasz's Recusal Motion.

15        Finally, Stasz admits that the court applied the proper legal standard in adjudication her

16  recusal motion.  Stasz's Motion, 3:17-18 ("[T]he Court's rulings and subsequent Orders were

17  solely based upon an application of 28 U.S.C. § 455 . . . .").  The standard to be applied for

18  determining whether recusal of a bankruptcy judge is appropriate is set forth in 28 U.S.C. §

19  455(a), which states:

20      Any justice, judge, or magistrate of the United States shall disqualify himself in any
    proceeding in which his impartiality might reasonably be questioned.

21

22  28 U.S.C. § 455(a) (emphasis added).  Furthermore, a bankruptcy judge may be disqualified if he

23  or she "has a personal bias or prejudice concerning a party, . . . ." 28 U.S.C. § 455(b)(1)

24  (emphasis added).  The test is whether an average, reasonable person, knowing all the

25  _____

26  [4] Stasz's Reply, 2:7-8. LBR 9013-1(h) states: "Papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be."

27

1    circumstances, would harbor doubts about the judge's impartiality.  Milgard Tempering, Inc. v.

2    Selas Corp. of Am., 902 F.2d 703, 714 (9th Cir. 1990);  In re Faulkner, 856 F.2d 716, 720 (5th

3    Cir. 1988).  The "reasonable person" standard assumes a "well-informed, thoughtful and

4    objective observer, rather than the hypersensitive, cynical, and suspicious person."  United States

5    v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995).

6        Generally, expressions of impatience, annoyance, dissatisfaction, or even anger are not

7    sufficient to establish bias or impartiality.  United States v. Landerman, 103 F.3d 1053, 1066 (5th

8    Cir. 1997).  A judge's critical or hostile remarks made during a judicial proceeding as to counsel,

9    parties or their cases, will not support a recusal motion unless they reveal either "an opinion that

10   derives from an extrajudicial source" or "such a high degree of favoritism or antagonism as to

11   make fair judgment impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994).  Nor do

12   judicial rulings alone, even if erroneous, "constitute a valid basis for a bias or partiality motion."

13   Id., see Cintron v. Union Pac. R.R. Co., 813 F.2d 917, 921 (9th Cir. 1987).

14       Stasz admits that the court, in fact, applied 28 U.S.C. § 455 in denying the recusal

15   motion, but argues that the court did not consider the Supreme Court's decision in Caperton v.

16   A.T. Massey Coal Co., ___ U.S. ___, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) in rendering its

17   decision.  Caperton can be distinguished on the facts.  In Caperton, a West Virginia jury awarded

18   Hugh Caperton, Harman Development Corp., Harman Mining Corp., and Sovereign Coal Sales

19   (collectively, "Caperton") the sum of $50 million after finding A.T. Massey Coal Co. and its

20   affiliates (collectively, "Massey") liable for fraudulent misrepresentation, concealment, and

21   tortious interference with contractual relations.  Id. at 2257.  Massey appealed the judgment to the

22   Supreme Court of Appeals of West Virginia.  At the time, Justice McGraw was a candidate for

23   reelection to that court.  His opponent was an attorney, Brent Benjamin ("Benjamin").  Don

24   Blankenship ("Blankenship"), who was Massey's president, chief executive officer, and

25   chairman, provided Benjamin with $3 million in campaign contributions – an amount "more than

26   the total amount spent by all other Benjamin supporters and three times the amount spent by

27

-6-

1   Benjamin's own committee." Id.  Benjamin defeated McGraw and took McGraw's seat on the

2   Supreme Court of Appeals of West Virginia.  Id.  Benjamin then refused three separate requests

3   to recuse himself from hearing Massey's appeal of the $50 million judgment in favor of

4   Caperton.  Id. at 2258-59.  Caperton's judgment against Massey was reversed by the Supreme

5   Court of Appeals of West Virginia.  Id. at 2259.  The Supreme Court reversed the judgment of

6   the Supreme Court of Appeals of West Virginia and remanded for further proceedings, stating:

7       Blankenship's campaign efforts had a significant and disproportionate influence in
        placing Justice Benjamin on the case.  Blankenship contributed some $3 million to unseat
8       the incumbent and replace him with Benjamin.  His contributions eclipsed the total
        amount spent by all other Benjamin supporters and exceeded by 300% the amount spent
9       by Benjamin's campaign committee. . . .

10      It was reasonably foreseeable, when the campaign contributions were made, that the
        pending case would be before the newly elected justice.  The $50 million adverse jury
11      verdict had been entered before the election, and the Supreme Court of Appeals was the
        next step once the state trial court dealt with post-trial motions.  So it became at once
12      apparent that, absent recusal, Justice Benjamin would review a judgment that cost his
        biggest donor's company $50 million.  Although there is no allegation of a quid pro quo
13      agreement, the fact remains taht Blankenship's extraordinary contributions were made at
        a time when he had a vested stake in the outcome.  Just as no man is allowed to be a
14      judge in his own cause, similar fears of bias can arise when - without the consent of the
        other parties – a man chooses the judge in his own cause.  And applying this principle to
15      the judicial election process, there was here a serious, objective risk of actual bias that
        required Justice Benjamin's recusal.

16
    Id. at 2264-65.  No such facts exist in this case.
17
        There was no credible evidence in the record that Judge Ahart's connections with Bank of
18
    America (or Charles Schwab Corporation, Charles R. Schwab, or Hugo W. Quackenbush by
19
    virtue of such connections with Bank of America) prior to his appointment to the bench in 1988
20
    created an actual conflict of interest with respect to any disputed matter adjudicated by him
21
    during the administration of the Stasz bankruptcy estate.  Nor does the evidentiary record support
22
    a finding that Judge Ahart's failure to disclose such connections when the Stasz case was filed 17
23
    years after his appointment to the bench "created a constitutionally intolerable probability of . . .
24
    actual bias . . . ," as alleged by Stasz.  See Recusal Motion, 3:23-26.
25
        Reconsideration under Rule 9023 is not intended to give a litigant a "second bite at the
26
    apple."  See In re Christie, 222 B.R. 64, 67 (Bankr. D.N.J. 1998) (citation omitted); see also
27

- 7 -

1  Voelkel v. Gen. Motors Corp., 846 F.Supp. 1482, 1483 (D. Kan. 1994), aff'd, 43 F.3d 1484 (10th

2  Cir. 1994) ("A motion to reconsider is not a second chance for the losing party to make its

3  strongest case or to dress up arguments that previously failed."); U.S. v. Carolina E. Chem. Co.,

4  639 F. Supp. 1420, 1423 (D.S.C. 1986) ("A party who failed to prove his strongest case is not

5  entitled to a second opportunity by moving to amend a finding of fact or a conclusion of law.");

6  In re Hillis Motors, Inc., 120 B.R. 556, 557 (Bankr. D. Haw. 1990) (Rule 59 does not "give a

7  disappointed litigant another chance."(citation omitted)).

8                            III. CONCLUSION

9         For the reasons stated, Stasz's motion for reconsideration will be denied.

10        A separate order will be entered consistent with this memorandum.

11  DATED: January 14, 2011

12                                    PETER H. CARROLL
                                      United States Bankruptcy Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27